# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued April 27, 2006           Decided June 2, 2006

No. 05-1063

INTERNATIONAL TRANSPORTATION SERVICE, INC.,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

———

Consolidated with
05-1126

———

On Petitions for Review and Cross-Application for
Enforcement
of an Order of the National Labor Relations Board

———

*Scott J. Witlin* argued the cause and filed the briefs for petitioner. *Stanley R. Strauss* and *Brian W. Steinbach* entered appearances.

*Ruth E. Burdick*, Attorney, National Labor Relations Board, argued the cause for respondent. With her on the brief were *Arthur F. Rosenfeld*, Acting General Counsel, *John H. Ferguson*, Assistant General Counsel, *Aileen A. Armstrong*, Deputy Associate General Counsel, and *Julie B. Broido*, Senior

Attorney.

Before: SENTELLE, HENDERSON and RANDOLPH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* SENTELLE.

SENTELLE, *Circuit Judge*: International Transportation Service, Inc. ("ITS") petitions for review of a National Labor Relations Board ("the Board" or "NLRB") order finding it in violation of Section 8(a)(3) and (1) of the National Labor Relations Act ("NLRA" or "the Act"), 29 U.S.C. § 158(a)(3) and (1). The Board concluded that ITS committed an unfair labor practice when it fired employee Deanna Tartaglia after she picketed for recognition of a union as her personal bargaining representative. Because we conclude that Tartaglia did not engage in protected activity, and ITS therefore did not unlawfully discharge her, we grant the petition for review.

## I.

ITS operates a container terminal at the port of Long Beach through which imports and exports pass continuously. Through its membership in the Pacific Maritime Association ("PMA"), the company indirectly employs longshoremen represented by local unions affiliated with the International Longshore and Warehouse Union ("ILWU"). ITS directly employs its office clerical workers, a bargaining unit represented by the Office Clerical Unit ("the Union") of ILWU. The company also employs a single "Payroll and Billing Representative" whose union representation is the subject of this case.

During past bargaining with ITS on behalf of the office clerical bargaining unit, the Union also attempted to negotiate on behalf of the Payroll and Billing Representative. Each time,

however, the Union ultimately agreed to leave the position out of the unit. Accordingly, when ITS hired Deanna Tartaglia in June 1999 as the Payroll and Billing Representative, the Union was not authorized to bargain on her behalf. Not dissuaded by prior failures, the Union asserted itself once more: On February 4, 2002, it presented ITS with a letter demanding recognition as the bargaining representative of a single-employee unit consisting of Tartaglia. The letter imposed a one-hour deadline, which the Union extended until the next morning. On February 5, ITS rejected the demand and refused to recognize the Union as Tartaglia's bargaining representative.

Two Union representatives and Tartaglia immediately responded by picketing. No other ITS employees joined the picket line, but many ILWU-affiliated employees ceased working. The work stoppage, having brought the terminal to a halt, prompted ITS to request expedited arbitration with ILWU through the PMA. Within a few hours, the arbitrator concluded that the picket line was not bona fide and ruled in the company's favor, allowing ITS to refuse to pay employees who honored the picket line. Although not subject to the arbitration, the Union and Tartaglia ended the picket line following the ruling.

The short work stoppage cost ITS a significant amount of money and goodwill with its customers. It caused a mile-long truck backup, delayed several shipments, and cost upwards of $90,000. In addition, despite the arbitrator's award, many workers who honored the picket line did not return until the next day. Because her actions triggered the events, ITS fired Tartaglia on February 8.

The Union filed an unfair labor practice charge against ITS for Tartaglia's termination. The NLRB's Regional Director issued a complaint based on that charge, alleging that ITS violated Section 8(a)(3) and (1) of the NLRA by discharging

Tartaglia for participating in the picket line. After a hearing, an Administrative Law Judge ("ALJ") found that ITS had committed an unfair labor practice by discharging Tartaglia for picketing.

ITS filed exceptions, arguing that it committed no violation because Tartaglia did not engage in activity protected by the Act. Specifically, ITS argued that the Union's recognitional picketing violated Section 8(b)(7)(C) because the Board could not certify Tartaglia as a single-employee bargaining unit. By assisting the Union's unlawful actions, therefore, Tartaglia could not receive the Act's protection under ITS's theory. ITS also argued that Tartaglia was either a managerial or supervisory employee not subject to the protections of the Act.

The NLRB rejected ITS's exceptions and adopted the ALJ's ruling, which held on two alternative grounds that Tartaglia had engaged in protected activity. First, relying on *Teamsters Local Union No. 115 (Vila-Barr Co.)*, 157 NLRB 588 (1966), it concluded that a union does not violate Section 8(b)(7)(C) when it pickets for recognition of a single-employee unit. ITS pressed the Board to abandon *Vila-Barr* in light of a Seventh Circuit case that questioned its correctness, *see Int'l Bhd. of Teamsters v. NLRB*, 568 F.2d 12, 18 (7th Cir. 1977) ("*Purolator Security*"), but the Board declined. It therefore concluded that neither the Union nor Tartaglia unlawfully picketed for recognition.

Second, the Board alternatively held that Tartaglia's picketing was protected even if the Union's was prohibited. Concluding that Tartaglia did not act as the Union's representative or agent, the Board refused to impute any wrongdoing by the Union to Tartaglia. The Board also found that the Act protected Tartaglia's individual picketing because it was "union activity." Even though she did not act in concert with other employees, it considered the union activity inherently

5

concerted.

ITS timely petitions for review of the Board's order, and the Board cross-applies for enforcement. The company raises three challenges to the Board's order. First, it argues that Tartaglia did not engage in protected, concerted activity when she joined the Union's picket line. It therefore urges this court to reject *Vila-Barr* and find that Section 8(b)(7)(C) prohibits recognitional picketing for single-employee bargaining units. Second, ITS argues that Tartaglia was either a managerial or supervisory employee not subject to the Act's protections. Third, ITS argues that the Board improperly refused to hear evidence of Tartaglia's misconduct prior to fashioning a remedy. Because we agree that Tartaglia did not engage in protected activity, we do not address the other arguments.

II.

We review the NLRB's orders under a deferential standard. If supported by substantial evidence, the Board's findings of fact are conclusive. 29 U.S.C. § 160(e). Unless arbitrary or capricious, we will uphold the agency's policy judgments. *Diamond Walnut Growers, Inc. v. NLRB*, 113 F.3d 1259, 1266 (D.C. Cir. 1997) (en banc). This level of deference, though high, has limits, and we will not "rubberstamp NLRB decisions." *Cleveland Constr., Inc. v. NLRB*, 44 F.3d 1010, 1014 (D.C. Cir. 1995). The Board must provide "a reasoned explanation" for its decisions. *Petroleum Comm. v. FCC*, 22 F.3d 1164, 1172 (D.C. Cir. 1994).

In this case, the Board held that ITS violated Section 8(a)(3) and (1) of the Act by firing Tartaglia after she picketed for recognition of herself as a single-employee bargaining unit. Under Section 8(a)(1), an employer may not "interfere with, restrain, or coerce employees in the exercise of the rights

guaranteed in" Section 7 of the Act. 29 U.S.C. § 158(a)(1). Section 8(a)(3) makes it an unfair labor practice for an employer to terminate an employee to "discourage membership in any labor organization." *Id.* § 158(a)(3). ITS argues that it could not have violated either of these provisions because Tartaglia's recognitional picketing was not protected by Section 7, which grants employees "the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." *Id.* § 157.

The Section 7 right to collective bargaining has never extended to single-employee bargaining units. As the Board has recognized since 1936, "the principle of collective bargaining presupposes that there is more than one eligible person who desires to bargain." *Luckenbach Steamship Co.*, 2 NLRB 181, 193 (1936). A single-employee bargaining unit by definition excludes all other eligible persons from the bargaining process. Accordingly, the Board will not certify single-employee bargaining units because the Act does not empower it to do so.

The Board's inability to certify a bargaining unit has ripples in other areas of labor law, including Section 8(b)(7)(C) of the Act, which forbids unions from picketing "where such picketing has been conducted without a petition [for election] being filed within a reasonable period of time not to exceed thirty days from the commencement of such picketing." 29 U.S.C. § 158(b)(7)(C). In other words, Section 8(b)(7)(C) prohibits picketing for recognition of a bargaining unit where the Board will not certify the unit. This principle holds true for mixed-guard units,[1] which the Act outlaws. *Id.* § 159(b)(3). Because

---

[1]Section 9(b)(3) defines "guard" as a term of art for employees who "enforce against employees and other persons rules to protect

the Board may not certify mixed-guard units, longstanding law holds that Section 8(b)(7)(C) prohibits recognitional picketing on their behalf. *See Drivers, Chauffers, Warehousemen v. NLRB*, 553 F.2d 1368, 1376-77 (D.C. Cir. 1977); *Purolator Security*, 568 F.2d at 18.

In *Vila-Barr*, the Board exempted single-employee units from this general rule, thus creating conflict with the mixed-guard cases. Although the Board will not certify single-employee units, it held in *Vila-Barr* that Section 8(b)(7)(C) does not prohibit unions from picketing for recognition of such a unit. 157 NLRB 588. The Board reasoned that it would be "inequitable" to deny the right to picket for recognition of such units because "[t]here is no statutory or other policy against representation of an individual employee in a stable one-man unit by an authorized representative." *Id.* at 589-91.

The Seventh Circuit has called *Vila-Barr* into question. Upholding the Board's rule on mixed-guard units, it broadly stated that Section 8(b)(7)(C) "bars recognitional picketing after it is determined that no Board-conducted election will be held." *Purolator Security*, 568 F.2d at 18. In dictum, the court further stated that *Vila-Barr* "was incorrect." *Id.* at 18 n.12. The court disagreed with the Board's distinguishing of *Vila-Barr* from the mixed-guard cases and concluded the same policy—"to stop unions from imposing their will on employers and employees"—applies to preclude recognitional picketing for single-employee units. *Id.*

We too have held that Section 8(b)(7)(C) "appears to contemplate picketing by way of prelude to an election."

property of the employer or to protect the safety of persons on the employer's premises." 29 U.S.C. § 159(b)(3). A mixed-guard unit includes both guards and nonguards.

*Drivers, Chauffers, Warehousemen*, 553 F.2d at 1377. In other words, a union violates Section 8(b)(7)(C) by picketing for recognition when there is no "reasonable prospect of a Board-conducted election." *Id.* at 1376-77. We agreed with the Board that picketing for recognition of a mixed-guard unit did not satisfy that condition. Although we noted the tension between our reasoning and *Vila-Barr*, the issue was not before us, and we did not reject the case at the time. *Id.* at 1377 n.31. We do so now.

The Board understandably followed *Vila-Barr* as precedent,[2] but we are not so bound. *See Alabama Mun. Distribs. Group v. FERC*, 312 F.3d 470, 473-74 (D.C. Cir. 2002). No rational distinction supports the Board's different treatment of single-employee units and mixed-guard units for purposes of recognitional picketing. The fact that the Act prohibits the certification of mixed-guard units, *see* 29 U.S.C. § 159(b)(3), does not help the Board because the Act does not permit it to certify one-person units either. As the Board held in 1936, the very nature of collective bargaining is incompatible with single-employee bargaining units. *Luckenbach*, 2 NLRB at 193. It is a distinction without a difference that the Act expressly prohibits the Board from certifying mixed-guard units and implicitly prohibits the certification of single-employee units. The Act does not empower the Board to certify either type of unit. Therefore, picketing for recognition of either type of unit in no way serves as a "prelude to an election." We therefore reject *Vila-Barr* and hold that Section 8(b)(7)(C) prohibits a union from petitioning for recognition of a one-person unit, as the Union did here.

---

[2]Two Members of the Board noted "the absence of a three-member Board majority to overrule *Vila-Barr*" and therefore applied it as Board precedent. *Int'l Transp. Serv., Inc.*, 344 NLRB No. 22, at 1 n.2 (2005).

Yet the Board held that Tartaglia did not need *Vila-Barr* to receive Section 7's protections because Section 8(b)(7)(C) only prohibits union activity. The Board did not impute the Union's wrongdoing to Tartaglia because it found she was neither an agent nor representative of the Union. This conclusion makes little sense. Tartaglia authorized, joined, and was the subject matter of the picket line. The Union had no other agenda than to seek recognition as her personal bargaining representative. Were it not for her, the Union would not have picketed in violation of Section 8(b)(7)(C). Accordingly, Tartaglia made possible and participated in all of the Union's wrongdoing. Thus, the unlawful endeavor was hers as much as the Union's.

The Board's error runs deeper. Even if Tartaglia did not personally engage in *prohibited* activity by joining the picket line, the Board did not explain why her assistance of prohibited activity would otherwise be *protected*. The Act does not protect all nonprohibited activities: Rather, it protects some activities, prohibits some, and leaves others in a suspended state, neither authorized nor punishable. The Board's decision not to impute wrongdoing to Tartaglia means only that she did not violate the Act. It does not thereby usher her into the safety of Section 7.

Furthermore, the Board's ruling creates perverse protections for employees. It immunizes from employer discipline those employees who aid a union's unlawful activities. Presumably, the ruling would also protect an employee who helps a union vandalize his employer's property simply because he assisted a union. We decline to adopt this "Union made me do it" defense for employee misconduct. The Act does not protect an employee for assisting a union's unlawful acts.

We also reject the Board's alternative holding that Tartaglia's so-called "union activity" was the kind of concerted activity protected by Section 7. To be sure, the Supreme Court

has accepted that in some circumstances employees who act alone may also be engaged in concerted activity. *NLRB v. City Disposal Sys., Inc.*, 465 U.S. 822 (1984). Specifically, the Court approved of the NLRB's so-called "*Interboro* doctrine," which held that an employee who individually asserted a collective bargaining right had engaged in concerted activity. *Id.* at 829-30 (citing *Interboro Contractors, Inc.*, 157 NLRB 1295 (1966)). The Court embraced the Board's justifications for the *Interboro* doctrine as well: (1) that assertion of a collective-bargaining right was an extension of the concerted action that resulted in the agreement; and (2) that the individual, by asserting the right, had affected the rights of all other employees under the agreement. *Id.* at 829. The Court also recognized the Board's counterpart to *Interboro*, which held that a nonunionized employee asserting a noncollective-bargaining right had not engaged in concerted activity. *Id.* at 829 n.6 (citing *Meyers Indus., Inc.*, 268 NLRB 493 (1984)).

This court has also approved of the Board's rule in *Meyers*: Concerted activity "encompasses [only] those circumstances where individual employees seek to initiate or to induce or to prepare for group action, as well as individual employees bringing truly group complaints to the attention of management." *Prill v. NLRB*, 835 F.2d 1481, 1484 (D.C. Cir. 1987) (alteration in original). Accordingly, "concerted activity includes circumstances where individual employees work to initiate, induce or prepare for group action." *Citizens Inv. Servs. Corp. v. NLRB*, 430 F.3d 1195, 1198 (D.C. Cir. 2005). To that end, employees engage in concerted activity when bringing group complaints to management's attention. *Id.* at 1199. The touchstone for concerted activity, then, must be some relationship between the individual employee's actions and fellow employees.

The facts do not support the Board's conclusion that Tartaglia engaged in concerted activity by assisting the Union. If anything, the Board had it backwards: The Union assisted Tartaglia. It formed a picket line for the sole purpose of securing recognition as Tartaglia's personal bargaining representative. It did not assert the interest of any other party. In other words, the Union had the sole goal of aiding Tartaglia, and she had the sole aim of aiding the Union in helping herself. Likewise, Tartaglia only aided the Union in its attempt to help her personally. She did not assist the Union on behalf of her fellow employees; neither did she "engage in behavior that supported *union* employers and employees." *Tradesmen Int'l, Inc. v. NLRB*, 275 F.3d 1137, 1142 (D.C. Cir. 2002) (emphasis in original). Under the Board's reasoning, Tartaglia, by latching onto a union, could seek individual ends that she could not seek otherwise.

Tartaglia's personal picketing did not involve collective action for "achiev[ing] common goals" any more than the Union's picketing. *City Disposal*, 465 U.S. at 830. She did not assert a right obtained under a collective bargaining agreement through prior group action, as had the employee in *City Disposal*. Indeed, she had been repeatedly excluded from the office bargaining unit and therefore had no rights to assert from prior collective action. Neither did she act on behalf of other employees. She instead requested recognition of the Union as her *personal* bargaining representative. Even upon a successful picketing campaign, she had no interest in spurring group action; rather, any resulting agreement would have been a personal agreement with ITS not applicable to any other employee. Her picketing therefore did not raise the "truly group complaints" necessary for a finding of concerted activity.

Consequently, the Board has demonstrated no relationship between Tartaglia's individual action and any effect on, or

authority from, fellow employees. Tartaglia did not engage in concerted activity and therefore does not receive Section 7 protection for her picketing. Neither does Section 7 protect her for assisting the Union's wrongdoing. Accordingly, we conclude that ITS did not violate Section 8(a)(3) and (1) when it discharged Tartaglia.

## III.

For the above reasons, we grant the petition for review.