# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued October 9, 2015       Decided December 11, 2015

No. 11-1297

NOVA SOUTHEASTERN UNIVERSITY,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

Consolidated with 11-1331

On Petition for Review and Cross-Application
for Enforcement of an Order of
the National Labor Relations Board

*James M. Walters* argued the cause for petitioner. With him on the briefs was *Charles S. Caulkins*.

*Amy H. Ginn*, Attorney, National Labor Relations Board, argued the cause for respondent. On the brief were *John H. Ferguson*, Associate General Counsel, *Linda Dreeben*, Deputy Associate General Counsel, and *Robert J. Englehart*, Supervisory Attorney.

Before: GARLAND, *Chief Judge*, ROGERS, *Circuit Judge*, and GINSBURG, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: Nova Southeastern University petitions for review of the decision and order of the National Labor Relations Board, 357 N.L.R.B. No. 74 (2011), finding that it violated § 8(a)(1) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158(a)(1), by maintaining an overly broad no-solicitation rule on its Fort Lauderdale campus; enforcing that rule against an employee of its onsite contractor and disciplining that employee through its contractor; and making coercive statements to a laid-off employee of that contractor who was seeking employment with Nova's new contractor. We deny the petition for review and grant the Board's cross-application for enforcement of its order.

**I.**

Nova Southeastern University is a private educational institution with an approximately 300-acre campus in Fort Lauderdale, Florida. In 2000, Nova hired UNICCO Service Company to provide maintenance, landscaping, and janitorial services throughout its campus. UNICCO employees worked out of the physical plant/central services building where they reported for their shifts. Nova's contract required UNICCO employees to undergo pre-employment drug testing and a background check that included a security report from Nova's public safety department. The contract also required UNICCO to enforce Nova's policies, report policy violations to Nova, and ensure UNICCO's employees "abide by all rules, regulations and policies of [Nova] . . . ."

In 2006, UNICCO employee Steve McGonigle arrived on campus before his shift began and distributed handbills to his coworkers in the parking lot adjacent to the central services building. After five or ten minutes, a Nova public safety officer

told him to stop, referring to Nova's no-solicitation rule prohibiting any solicitation on campus without prior authorization. McGonigle stated that he had the right to handbill during non-working hours, but complied and went into the central services building. After telling his UNICCO coworkers about what had just happened and Nova's no-solicitation rule, McGonigle went to Nova's public safety department building to complain that his right to handbill had been violated. There, several Nova officials reiterated that Nova's no-solicitation rule prohibited him from soliciting on campus absent Nova's advance permission.

Tony Todaro, who at that time was employed by UNICCO as the Director of Physical Plant on Nova's campus, was informed by Nova of McGonigle's handbilling. According to McGonigle, whose testimony was credited by the Administrative Law Judge ("ALJ"), Todaro called McGonigle into his office two days after the incident and issued him a written disciplinary notice for "handing out (solicitation and distribution) of unauthorized materials at the job location" without prior permission from Nova and UNICCO. Progressive Discipline Notice 1 (Aug. 24, 2006). Todaro indicated that the practice was to stop immediately.

Nova terminated its contract with UNICCO on February 17, 2007, and replaced UNICCO with several successor contractors. UNICCO laid off its employees who had been working on the Nova campus. Some, like Todaro and Thai Nguyen, another supervisor, were hired by Nova to perform work similar to what they had been doing as UNICCO employees.

The next working day after the layoffs, Jose Sanchez, a former UNICCO employee who had worked at Nova's campus, approached Todaro on campus to seek his assistance in being hired by one of Nova's new contractors. According to Sanchez,

whose testimony the ALJ credited, Todaro, now a Nova supervisor, asked Sanchez whether he had supported the union and suggested that he might be able to get paid by the union for picketing. He told Sanchez that he could not help him at that time, but to call him in a couple of months.

Based on charges filed by the Service Employees International Union, Local 11, the General Counsel charged, as relevant, that Nova violated NLRA § 8(a)(1) by maintaining and enforcing an overly broad no-solicitation rule, interfering with the distribution of union literature by an off-duty contractor employee in a non-working area, and issuing a disciplinary warning to that employee. The complaint also charged that Nova violated section 8(a)(1) by interrogating a laid off contractor employee about his union activities and implicitly threatening that laid off employees would not be hired for work on campus because of their union activities. Following an evidentiary hearing, the ALJ found Nova had violated section 8(a)(1) as alleged. Nova filed exceptions. The Board affirmed the ALJ's findings with respect to violations related to the off-duty contractor employee's handbilling and discipline. It modified the ALJ's proposed order with regard to the interrogation of the laid off contractor employee, finding only that Nova violated section 8(a)(1) by making coercive statements linking the employee's union support to his lack of employment. The Board ordered Nova to cease and desist from interfering with its employees' rights under NLRA § 7 in violation of section 8(a)(1); to rescind its no-solicitation rule; and to remove from the handbilling contractor employee's personnel files any reference to the unlawful discipline, ask UNICCO to do the same, and notify that employee in writing that it has done so and that the discipline will not be used against him in any way. Nova was also required to post a remedial notice.

Nova petitioned for review, the Board cross-applied for enforcement, and the cases were consolidated. The court held the cases in abeyance in part pending review of the Board's decision on remand in *New York New York*, *LLC d/b/a New York New York Hotel & Casino*, 356 N.L.R.B. No. 119 (2011) (hereafter "*NYNY*") and, because one Member of the Board was a recess appointee, pending the Supreme Court's decision in *NLRB v. Noel Canning*, 573 U.S. __ , 134 S. Ct. 2550 (2014).

## II.

By way of overview, we note that much of Nova's petition for review centers on the Board's application of its decision in *NYNY*. There, the Board balanced the employee's rights under section 7 and the employer's rights to control the use of its premises and manage its business and property, and concluded that onsite contractor employees have the right under section 7 to distribute union-related handbills during nonwork time and in nonwork areas, unless the property owner can demonstrate that the handbilling significantly interferes with its use of the property or justifies its prohibition by other legitimate business reasons. The court approved the Board's determination, concluding that the NLRA and Supreme Court precedent granted the Board discretion over how to treat onsite contractor employees for these purposes. *New York New York v. NLRB*, 676 F.3d 193, 196 (D.C. Cir. 2012). Consequently, the Board did not commit reversible error in deeming *NYNY* controlling.

Several of Nova's other contentions falter due to its failure to acknowledge the limits of this court's jurisdiction when it did not adhere to the requirements for filing exceptions to the ALJ's decision. Under NLRA § 10(e), "[n]o objection that has not been urged before the Board . . . shall be considered by the court, unless the failure . . . to urge such objection shall be excused because of extraordinary circumstances." 29 U.S.C.

§ 160(e). And it is long established that where a petitioner objects to a finding on an issue first raised in the Board's decision, a petitioner must file for reconsideration to afford the Board an opportunity to correct the error, if any. *See Woelke & Romero Framing, Inc. v. NLRB*, 456 U.S. 645, 666 (1982). The Board's rules require, in turn, that any objection must "set forth specifically the questions . . . to which exception is taken[,]" 29 C.F.R. § 102.46(b)(1) (2007), and "present[ ] clearly the points of fact and law relied on[,]" *id.* § 102.46(c)(3). *See Spectrum Health–Kent Cmty. Campus v. NLRB*, 647 F.3d 341, 348-49 (D.C. Cir. 2011); 29 C.F.R. § 102.46(b)(2). Application of section 10(e) is mandatory. *Exxel/Atmos, Inc. v. NLRB*, 147 F.3d 972, 978 (D.C. Cir. 1998).

Finally, in urging its petition be granted, Nova does not contest that the Board has "primary responsibility for developing and applying national labor policy." *NLRB v. Curtin Matheson Scientific, Inc.*, 494 U.S. 775, 786 (1990); *see Beth Israel Hosp. v. NLRB*, 437 U.S. 483, 501 (1978). Nor that our review of the Board's decision and order is deferential. *See Int'l Transp. Serv., Inc. v. NLRB*, 449 F.3d 160, 163 (D.C. Cir. 2006). To the extent Nova challenges the Board's factual findings, it acknowledges that these findings are conclusive if supported by substantial evidence on the record as a whole. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477, 488 (1951); 29 U.S.C. § 160(e). Nova does, however, challenge the Board's extension of its precedent in finding Nova violated section 8(a)(1) as a result of coercive statements made by its employee to a former contractor employee who was seeking employment with Nova's new contractor.

**A.**

The Board is entitled to summary enforcement of the uncontested portion of its order regarding the no-solicitation rule as applied to Nova's own employees. *See N.Y. Rehab. Care*

*Mgmt. v. NLRB*, 506 F.3d 1070, 1076 (D.C. Cir. 2007). Nova failed to file a proper exception to the ALJ's finding that Nova's no-solicitation rule was unlawful as applied to its own employees and it does not show that special circumstances justify this failure. Its exceptions do no more than state a generalized objection to the ALJ's analysis without providing the detail required by the Board's rules or otherwise putting the Board on notice of the specific grounds for its objections. Excepting generally is insufficient. *See* 29 C.F.R. § 102.46. Therefore, the court lacks jurisdiction to review this part of the Board's order. NLRA § 10(e), 29 U.S.C. § 160(e); *Woelke & Romero Framing, Inc.*, 456 U.S. at 665.

## B.

The Board reasonably found that Nova violated section 8(a)(1) by prohibiting McGonigle from engaging in handbilling on a campus parking lot. Nova maintains that, under *Lechmere, Inc. v. NLRB*, 502 U.S. 527 (1992), and *NLRB v. Babcock & Wilcox Co.*, 351 U.S. 105 (1956), UNICCO onsite contractor employees are analogous to non-employee union organizers who are not entitled to solicit on its property. In *NYNY*, however, the Board emphasized that, in view of the broad definition of "employee" in NLRA § 2(3), 29 U.S.C. § 152(3), "the precise terms of the [NLRA's] prohibitions [in NLRA § 8(a)(1)] . . . make clear that an employer's action toward the employees of other employers can constitute an unfair labor practice." 356 N.L.R.B. No. 119 at 6. The Board rejected the view that an onsite contractor employee's section 7 rights depended on the contractor having a "leasehold interest or fixed place of work within the owner's property," *id.* at 9, referencing as an example contractors serving as janitors throughout an office building whose section 7 rights would otherwise be diminished. In *NYNY,* as here, the expressive activity occurred at the "very threshold of the employees' own workplace[,]" namely at the entrances to the casino and two onsite restaurants where the

contractor employees worked. *Id.* at 13. The Board concluded that the section 7 rights of onsite contractor employees "are much more closely aligned to those of NYNY's own employees . . . than . . . the interests of the union organizers at issue in *Lechmere* and *Babcock & Wilcox*. . . . They were not strangers or outsiders to NYNY's property; rather, they worked there regularly, for an employer with a close economic relationship to NYNY. Finally, they sought access to locations that were uniquely suited to the effective exercise of their statutory rights." *Id.*

So, too, McGonigle. UNICCO had a close economic relationship with Nova during the term of their contract and its employees were regularly employed on Nova's campus. Although UNICCO did not have a leasehold interest like the contractor in *NYNY*, the handbilling occurred on campus as "no other location . . . could be more appropriately understood as [UNICCO employees'] workplace." 357 N.L.R.B. No. 74 at 2. Under *NYNY*, then, McGonigle's handbilling was protected activity under section 7 and his status was not equivalent to that of a non-employee union organizer.

Further, the Board reasonably concluded that Nova failed to meet its burden in attempting to show that its no-solicitation rule was justified by legitimate business reasons. Although Nova presented evidence of security concerns that it claimed justified the no-solicitation rule, it never explained how its campus would be less safe if its on-site contractor employees were permitted to distribute handbills to their co-workers. Nova's evidence showed that the campus is freely accessible to both vehicles and pedestrians; as its Vice President for Facilities Management explained, pedestrians can "pretty much walk on campus at will." ALJ Hr'g Tr. 217 (Nov. 18, 2008). The Board acknowledged both "the validity and the importance" of the need to ensure security on Nova's open campus, but noted that

its no-solicitation rule prohibited "the distribution of literature, not trespassing or unauthorized entry[,]" and that Nova "maintained a broad range of controls over UNICCO and its employees" that addressed security concerns. 357 N.L.R.B. No. 74 at 3. Even before this court, Nova's briefs fail to offer an explanation of how its no-solicitation rule addresses its security concerns.

To the extent Nova objects to the ALJ's exclusion of certain safety evidence by its Public Safety Director, it fails to show that it suffered prejudice as a result. *See Exxon Chem. Co. v. NLRB*, 386 F.3d 1160, 1166 (D.C. Cir. 2004); *Reno Hilton Resorts v. NLRB*, 196 F.3d 1275, 1285 n.10 (D.C. Cir. 1999). The ALJ excluded as irrelevant evidence of events that "occurred after the dates involved" in Nova's enforcement of its no-solicitation rule as to McGonigle. *See* ALJ Hr'g Tr. 133-34 (Nov. 17, 2008). On appeal, Nova maintains that this evidence would have related to the "vulnerability of the campus," Pet'r/Cross-Resp't's Br. 41-43, and "on-campus crimes . . . by Nova's contractor[s]," Pet'r/Cross-Resp't's Reply Br. 6-7 (internal quotation omitted). Although Nova's June 12, 2009 reply brief to the Board may have sufficiently identified its objection to the ALJ's exclusion of this evidence, Nova failed to explain how this testimony would show "why the campus would be any less safe if [UNICCO employees] distributed union flyers to fellow employees." 357 N.L.R.B. No. 74 at 3. Nova presented testimony about its security concerns and various incidents, and noted in its reply brief to the Board both the "numerous incident reports introduced by the General Counsel" and the "corroborating testimony" by Nova's Vice President for Facilities Management. The Board accepted the validity of Nova's safety concerns and explained how it factored them into its conclusion. *See id.* Under the circumstances, Nova fails to show prejudice.

Nova's other objection that it did not "prohibit" McGonigle from handbilling, but merely required that he obtain prior permission, fares no better. Under long-established Board precedent, an employer may not condition the exercise of section 7 rights upon its own authorization. *J.R. Simplot Co.*, 137 N.L.R.B. 1552, 1553 (1962); *see Cogburn Health Ctr., Inc. v. NLRB*, 437 F.3d 1266, 1270-71 (D.C. Cir. 2006); *Jas. H. Matthews & Co. v. NLRB*, 354 F.2d 432, 440 (8th Cir. 1965). Nova's attempt to distinguish this precedent on the basis that Nova did not directly employ McGonigle is "essentially" repeating the argument the Board rejected in *NYNY* that onsite employees are not entitled to solicit because they are equivalent to non-employee union organizers. Resp't's Br. 18. Nova's argument that it did not "exclude" McGonigle from its campus is thus immaterial.

Nova's suggestion that there was no record basis for imputing section 8(a)(1) liability to it for the discipline imposed by a UNICCO supervisor on one of its own employees for violating Nova's non-solicitation rule also lacks merit. Substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Universal Camera*, 340 U.S. at 477, supports the Board's finding that Todaro, while acting as Nova's agent, disciplined McGonigle for handbilling in violation of Nova's no-solicitation rule. First, the ALJ credited McGonigle's testimony regarding his conversation with Todaro, and Nova fails to present grounds on which the court can reject that determination. *See Wayneview Care Ctr. v. NLRB*, 664 F.3d 341, 349 (D.C. Cir. 2011); *cf. Progressive Elec., Inc. v. NLRB*, 453 F.3d 538, 551 (D.C. Cir. 2006). According to McGonigle, Todaro told him that he was being "written up" for passing out handbills on Nova's private property without prior authorization contrary to Nova's no-solicitation rule. Todaro gave McGonigle a disciplinary notice and a copy of the rule. All this occurred in

Todaro's office. Substantial evidence exists despite the absence of Todaro's signature on the disciplinary notice itself.

Second, there was substantial evidence that in disciplining McGonigle, Todaro was acting as Nova's agent. It has long been settled by the Board that an employer may violate the NLRA through the conduct of its agents. *E.g., Progressive Elec., Inc.*, 453 F.3d at 545-46. The Board applies common law principles of agency, construed liberally, when assigning liability under the NLRA. *See Int'l Ass'n of Machinists v. NLRB*, 311 U.S. 72, 80-81 (1940); *Progressive Elec., Inc.*, 453 F.3d at 545-46; *see also Uniroyal Tech. Corp. v. NLRB*, 98 F.3d 993, 999-1000 & n.15 (7th Cir. 1996). Although Todaro was a UNICCO supervisor at the time he spoke with McGonigle, UNICCO's contract required it to ensure that its employees complied with Nova's policies. Todaro wore work shirts with the logos of both UNICCO and Nova, had a Nova e-mail address, and was listed on Nova's website in a manner suggesting he was a Nova employee. In these circumstances, Todaro's enforcement of a Nova policy could cause an employee to reasonably believe that Todaro was acting on Nova's behalf, satisfying the standard for agency. *See Progressive Elec., Inc.*, 453 F.3d at 545-46.

## C.

Nova additionally contends that the Board misapplied *NYNY* in concluding that Nova's onsite contractor employees were entitled to distribute union literature in Nova's parking lot. In Nova's view, the contractors' maintenance work was not "integral" to Nova's business of providing a university education and the handbilling took place in an area that was a working area not open to the public. The court lacks jurisdiction to consider these challenges to the Board's application of *NYNY* because Nova failed to "urge[] [them] before the Board" pursuant to NLRA § 10(e).

Before the Board, Nova filed an exception to the ALJ's analysis that the facts here differ significantly from those in *NYNY*. Nova now seeks to challenge the Board's adoption of the ALJ's finding that the parking lot where McGonigle was handbilling was a nonworking area open to the public, pointing to the work done there by UNICCO and to Nova's permitting requirements for use of the parking lot. The exceptions Nova identifies as having previously made this objection to the Board, however, make only general objections to the ALJ's analysis. Nova never explained the grounds for these exceptions, nor addressed these issues in its brief to the Board, nor cited any supporting record evidence or case law. Such vague exceptions are insufficient under section 10(e). *See Parsippany Hotel Mgmt. Co. v. NLRB*, 99 F.3d 413, 417-18 (D.C. Cir. 1996).

Nova's attempt to challenge the Board's finding that McGonigle's work was "integral" to Nova's business of education also fails on procedural grounds. Although this finding was made for the first time by the Board, not the ALJ, Nova never sought reconsideration by the Board and it offers no extraordinary circumstances to excuse its failure. *See Oldwick Materials, Inc. v. NLRB*, 732 F.2d 339, 342 (3d Cir. 1984) (citing *Woelke*, 456 U.S. at 665, and *NLRB v. Dist. 50, United Mine Workers of Am.*, 355 U.S. 453, 463-64 (1958)).

## III.

Nova's remaining challenge is that the Board had no basis in law or fact to hold it liable under section 8(a)(1) for supposedly "coercive" statements made by Todaro to Sanchez, a former contractor employee seeking future employment with a new Nova contractor. Nova maintains that the Board's precedent is directed at the hiring process of an employer hiring employees. Even if it assumes Todaro was a Nova employee during his conversation with Sanchez, Nova maintains their

conversation was not a job interview, because Sanchez was not an applicant for a position with Nova, and Nova was not a potential employer of Sanchez. Moreover, there was no evidence that Todaro had decision-making authority or even input into the hiring decisions of Nova contractors.

Under NLRA § 7 and § 8(a)(1), it is unlawful for an employer to make threats or statements that tend to coerce employees in the exercise of their section 7 rights, including questions about union activities in the context of an employment interview. *Mathews Readymix, Inc.*, 324 N.L.R.B. 1005, 1007 (1997), *enforced in relevant part,* 165 F.3d 74, 76-78 (D.C. Cir. 1999); *W & M Props. of Conn., Inc. v. NLRB*, 514 F.3d 1341, 1348-49 (D.C. Cir. 2008); *see NLRB v. Solboro Knitting Mills, Inc.*, 572 F.2d 936, 939-40 (2d Cir. 1978). The Board, "[w]ithout deciding whether Todaro's statements to Sanchez constituted an unlawful interrogation and an unlawful implied threat," as the ALJ had found, concluded that Todaro's statements were coercive "in the context of Sanchez's request for assistance in gaining employment" and thus violated section 8(a)(1). 357 N.L.R.B. No. 74 at 4.

Nova correctly points out that Todaro's position as a Nova supervisor is distinct from a position with direct hiring authority for a Nova contractor, such as existed in the cases cited by the Board. The Board's decision acknowledges this reality not only in the "*cf*" signal to its precedent but in limiting its decision to the context of Sanchez's request for assistance in gaining employment and not deciding whether Todaro's statements to Sanchez constituted an unlawful interrogation and an unlawful implied threat as might have existed had Todaro had direct hiring authority for the job Sanchez was seeking. The principle underlying the Board's precedent, as stated in *Mathews Readymix, Inc*., 324 N.L.R.B. at 1007, is to protect section 7 rights by finding section 8(a)(1) liability where questioning

during a job interview about union sympathies can, "under all the circumstances . . . reasonably tend[] to restrain or interfere with employees in the exercise of their statutory rights" (internal citation omitted). Although the conversation between Sanchez and Todaro was not in the context of a job interview for a job with Nova, the Board could reasonably conclude that the rationale of its precedent extends to the owner-contractor context because there can be the functional equivalent of a job interview where the owner's supervisory employee is in a position to "assist" a former contractor employee in gaining employment with one of the owner's new contractors, even if the supervisor does not have final hiring authority.

The record evidence underscores the real-world appropriateness of the Board's application of its precedent in this context. According to Todaro, his supervisory role for Nova was to oversee contractors, including those who work on campus. The evidence showed that another former UNICCO supervisory employee had assisted laid-off UNICCO employees in obtaining employment with one of Nova's new contractors. Specifically, Thai Nguyen, who, like Todaro, had been hired by Nova, had successfully recommended that one of Nova's new contractors hire other laid off UNICCO employees. Regardless of whether that assistance occurred before Nguyen was hired by Nova, Todaro's instruction for Sanchez to call him in a few months conveyed that Todaro understood he was in at least a similar position to assist Sanchez in gaining employment with a new Nova contractor. The Board could reasonably so conclude given that Todaro was Nova's manager overseeing those contractors.

Otherwise, Nova's challenge fails because there is substantial evidence that Todaro's statements were "coercive." Nova stipulated to the ALJ that Todaro was hired as Nova's Physical Plant Director on February 18, 2007. Sanchez had

been employed by UNICCO to do maintenance work on Nova's campus, but was laid off when UNICCO's contract was terminated. Nova terminated its contract with UNICCO on February 17, 2007. The ALJ credited Sanchez's testimony about his conversation with Todaro, and, absent grounds to overturn the ALJ's credibility determination, *see Wayneview Care Ctr.*, 664 F.3d at 349, the Board's conclusion is supported by Sanchez's testimony that he and Todaro spoke on campus the following working day after Sanchez was laid off about getting employment with one of Nova's new contractors. Todaro responded by first asking whether Sanchez had supported the union and then suggested, "sarcastically," the Board found, that Sanchez might be able to get paid by the union for picketing. 357 N.L.R.B. No. 74 at 4. He also told Sanchez that although he could not help him get a job at that time Sanchez should call back in a couple of months. The Board could reasonably conclude that Todaro's statement indicated that Todaro likewise considered himself to be in a position to assist Sanchez in getting a job with Nova's new contractor and that Todaro's questions, while at the work site, about Sanchez's union activities were, under the circumstances, impermissibly coercive.

Accordingly, we deny the petition for review and grant the cross-application for enforcement of the Board's order.