# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued October 26, 2020          Decided June 8, 2021

No. 20-1008

NATIONAL LABOR RELATIONS BOARD,
PETITIONER

v.

NP PALACE LLC, D/B/A PALACE STATION HOTEL & CASINO,
RESPONDENT

INTERNATIONAL UNION OF OPERATING ENGINEERS,
LOCAL 501, AFL-CIO,
INTERVENOR

———

Consolidated with 20-1042

———

On Petition for Review and Cross-Application
for Enforcement of an Order of the
National Labor Relations Board

———

*David A. Rosenfeld* argued the cause and filed the briefs for petitioner International Union of Operating Engineers, Local 501, AFL-CIO.

*Heather S. Beard*, Attorney, National Labor Relations Board, argued the cause for respondent National Labor

Relations Board. With her on the brief were *Peter B. Robb*, General Counsel, *Ruth E. Burdick*, Acting Deputy Associate General Counsel, *David Habenstreit*, Assistant General Counsel, and *Usha Dheenan*, Supervisory Attorney.

Before: TATEL and WILKINS, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* RANDOLPH.

RANDOLPH, *Senior Circuit Judge*:

I.

In January 2018, the slot-machine technicians at Palace Station Hotel & Casino voted to organize. The National Labor Relations Board certified the International Union of Operating Engineers Local 501 to represent them, and the union asked Palace to produce documents.

Palace said no dice. For reasons irrelevant here, Palace believed that the union should not have been certified. But certification is not a "final agency action," so employers like Palace cannot go straight to court. *Terrace Gardens Plaza, Inc. v. NLRB*, 91 F.3d 222, 225 (D.C. Cir. 1996). Instead, they must first "refuse to bargain" and "suffer an unfair labor practice charge[.]" *Wackenhut Corp. v. NLRB*, 178 F.3d 543, 548 (D.C. Cir. 1999). Only then are they entitled to judicial review, with the claimed "invalidity of . . . certification" serving as "an affirmative defense." *Terrace Gardens*, 91 F.3d at 225. So to get its day in court, Palace stonewalled.

As a result, the Board found that Palace violated 29 U.S.C. §§ 158(a)(1) and (5). But the Board's usual remedy — an order

to "furnish all requested information" — would have left Palace in a fix. J.A. 152 n.15. According to Palace, some of that information was confidential, like its plans to "combat illegal gaming activity and money laundering." J.A. 151. Handing over such information could "severely compromise [Palace's] business" and "advantage would-be malefactors[.]" J.A. 154. (As we later explain, Board precedent caused a dilemma for any employer wishing to challenge certification *and* preserve confidentiality.)

So the Board devised a new remedy. When a certification-testing employer raises a "specific confidentiality interest," the Board will now listen. J.A. 152. If the interest is "legitimate on its face," the Board will order accommodative bargaining instead of immediate production. *Id.* Applying that rule here, the Board found that Palace's claim passed muster, so it ordered Palace to bargain over the union's request. *See* J.A. 153–54.

Separately, the Board ruled that customer complaints requested by the union were "not *presumptively* relevant" to the union's duty as the employees' bargaining representative. J.A. 151. Still, they might be relevant "in a particular case," so the Board remanded that issue "for further appropriate action." *Id.*

These petitions followed. In No. 20-1042, the union challenges the Board's confidentiality and relevance rulings. In No. 20-1008, the Board seeks enforcement against Palace.[1]

---

[1] Palace also petitioned for review, maintaining that it should not have to produce documents because the union was invalidly certified. But Palace later abandoned its certification challenge, thus waiving any objection to enforcement of the Board's order.

4

II.

A.

We begin with the Board's new remedy. The union claims that it runs afoul of 29 U.S.C. § 160(g),[2] which provides that Board orders are not automatically stayed pending review. According to the union, § 160(g) shows that Congress "did not excuse" employers who "resist[] a Board order." Reply Brief 6. Or put another way, employers who refuse to bargain must be "subject to the consequences." Petitioner's Brief 16. And the Board, we are told, has "no right to change that[.]" Reply Brief 7.

Section 160(g) is an odd starting point for oppugning the Board's new remedy. That subsection says nothing at all about remedies. And the new remedy does not "change" any liabilities or "excus[e]" any violations. Just the opposite: the Board explained that "a violation will be found for the refusal to provide information . . .." J.A. 152. Appealing to generic "consequences" is no way to show that the Act forecloses a particular remedy. So the union's statutory challenge goes nowhere.

The union also assails the Board's explanation that it needed a new remedy to save employers from a dilemma. As mentioned above, under one line of precedent, employers cannot bargain if they plan to test certification. *See Terrace Gardens*, 91 F.3d at 225. Meanwhile, a line of Board decisions said that employers could not raise a confidentiality defense without first bargaining. *See, e.g.*, *Detroit Newspaper Agency*, 317 N.L.R.B.

---

[2] "The commencement of proceedings under subsection (e) or (f) of this section shall not, unless specifically ordered by the court, operate as a stay of the Board's order." 29 U.S.C. § 160(g).

1071, 1072 (1995). The upshot: an employer like Palace had to "waive either its challenge to the union's certification or its confidentiality defense." J.A. 152.[3]

The union scoffs at all that. To test certification, it reasons, employers must break the law. And an employer who breaks the law "acts at its peril." Petitioner's Brief 17. So the new remedy rests on a "false conflict," and the Board was arbitrary and capricious to adopt it. *Id.* at 15.

But once again this begs the question. True, an employer like Palace tests certification at its own peril — yet this tells us nothing about *what peril* should befall. That is where the Board comes in. Here, the Board used its "broad discretion[]" to craft a remedy that protects confidential information. *Fibreboard Paper Prods. Corp. v. NLRB*, 379 U.S. 203, 216 (1964). That remedy is both reasonable and consistent with the Act, so we will not disturb it. *See id.*

We reject, too, the union's remaining scattershot arguments. The Board need not predict how its ruling would apply in other contexts or interact with other doctrines. *E.g.*, Petitioner's Brief 23–25 (discussing unilateral changes). On the contrary: the Board "has reason to proceed with caution, developing its standards in a case-by-case manner . . .." *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 294 (1974). Nor does the Board's decision — which concerns only remedies — alter the basic

---

[3] The Board called this situation a "Hobson's choice," but that is not quite right. J.A. 153 n.23. The eponymous Hobson was an Elizabethan liveryman who kept a stable near St. Catherine's College, Cambridge. To spare his best horses from overuse, he required riders to hire whichever mount was nearest the stable door. Hence the proverbial choice: take what is offered, or nothing at all. *See* Richard Steele, *The Spectator* No. 509 (1712). Here, Palace instead faced a *dilemma*.

duty to bargain. *See* Petitioner's Brief 23. Finally, the Board adequately addressed the risk that its rule would invite delay. *See id.* As the Board acknowledged, information "may be delayed" when a legitimate confidentiality interest is at stake. But in such cases, it explained, accommodative bargaining "best effectuates the policies of the Act . . .." J.A. 153.

B.

As to the Board's application of the new remedy, the union observes that Palace waited until summary judgment to raise confidentiality. *See* Petitioner's Brief 11. And it reminds us — quite rightly — that this was too late under the old scheme. Yet under the new approach, employers are free to raise confidentiality for the first time at summary judgment. *See* J.A. 152. The Board may grant the "benefits of a change in the law to the very part[y] whose efforts were largely responsible for bringing it about . . .." *Retail, Wholesale & Dep't Store Union v. NLRB*, 466 F.2d 380, 390 (D.C. Cir. 1972). So it was reasonable to apply the new remedy here.

It was also reasonable to find Palace's confidentiality claim "legitimate on its face." J.A. 152. True, Palace offered "no affidavit or admissible evidence" to prove confidentiality. Petitioner's Brief 22. But the Board does not require such proof. Instead, employers need only "articulate a specific confidentiality interest." J.A. 152. Palace did so, and the Board reasonably found the claim legitimate. *See Circus Circus Casinos, Inc. v. NLRB*, 961 F.3d 469, 475 (D.C. Cir. 2020).[4]

---

[4] The union seems to suggest that this finding is not supported by substantial evidence. *See* Petitioner's Brief 10–12, 19. But it "never sought reconsideration [of that issue] and it offers no extraordinary circumstances to excuse its failure." *Nova Se. Univ. v. NLRB*, 807 F.3d 308, 316 (D.C. Cir. 2015); *see also* 29 U.S.C. § 160(e). For the same reason, we may not consider the union's arguments that the new

III.

That brings us to the customer complaints. Recall that the Board found such complaints "not *presumptively* relevant." *Id.* at 150–51. But they may be relevant "in a particular case," so the Board remanded "for further appropriate action." J.A. 151. The union challenges that decision on several grounds.

We dismiss for lack of jurisdiction. Under the Act, courts may review only "final order[s] of the Board granting or denying relief . . .." 29 U.S.C. § 160(f). This ruling did neither. Instead, the Board remanded to allow further factual development, *see* J.A. 151 — hardly the "consummation of the agency's decisionmaking process[.]" *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (quoting *Chi. & S. Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 113 (1948)). It follows that the ruling is not a final order.

Our opinion in *Oil, Chemical & Atomic Workers Local Union No. 6-418 v. NLRB*, 694 F.2d 1289 (D.C. Cir. 1982), does not hold otherwise. The union there asked for "immediate release of the disputed information," but the Board ordered bargaining instead. Because the Board "denied the relief [that the union] sought," its order was final. *Id.* at 1295–96. Here, by contrast, the Board has neither granted nor denied the requested relief. J.A. 151.

The union ventures that its chance for judicial review might vanish if "the General Counsel were to withdraw the complaint" on remand. Reply Brief 25 n.14, 26 n.15. But it does not elaborate, and "[w]e need not consider cursory arguments made

---

remedy creates piecemeal bargaining, impedes the duty of fair representation, "nullifies the Complaint and Answer," and extends too broadly. *Compare* Petitioner's Brief 7–8, 13 *and* Reply Brief 15–16 *with* J.A. 163–69.

only in a footnote . . .." *Hutchins v. District of Columbia*, 188 F.3d 531, 539 n.3 (D.C. Cir. 1999) (en banc).  In all events, the General Counsel has "unreviewable discretion" to withdraw complaints.  *NLRB v. United Food & Com. Workers Union, Local 23*, 484 U.S. 112, 126 (1987).  So that prospect is not "a problem in need of a judicial solution" but instead "evidence of Congress' design[.]" *Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1078 (2020) (Thomas, J., dissenting).

\*

In No. 20-1042, we deny in part and dismiss in part the union's petition for review.  In No. 20-1008, we grant summary enforcement to the Board.  *See Wayneview Care Ctr. v. NLRB*, 664 F.3d 341, 347 (D.C. Cir. 2011).

*So ordered.*